# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARY HELEN TREVIZO,

      Plaintiff,

v.                                                                                  No. CV 16-854 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Mary Helen Trevizo's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 22), filed January 30, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 26), filed April 14, 2017; and Plaintiff's *Reply to Brief in Response to Motion to Reverse and Remand* (the "Reply"), (Doc. 27), filed April 28, 2017.

On January 14, 2013, Ms. Trevizo filed for supplemental security income, alleging hand and arm numbness, neck pain, leg problems, inability to read and write, and memory loss limited her ability to work. (Administrative Record "AR" 82). The Social Security Administration denied Ms. Trevizo's claim initially on April 15, 2013, and again upon reconsideration on September 24, 2013. (AR 10). Ms. Trevizo requested a hearing before an Administrative Law Judge ("ALJ") on November 4, 2013. (AR 10). The hearing was held on December 19, 2014, before ALJ John Rolph. (AR 10, 26). Michelle

Baca, an attorney, represented Ms. Trevizo at the hearing, and Pamela A. Bowman, an impartial vocational expert ("VE") testified at the hearing. (AR 10).

On March 6, 2015, ALJ Rolph issued his decision finding Ms. Trevizo not disabled as defined by the Social Security Act. (AR 26). Ms. Trevizo requested the Appeals Council review the decision on April 7, 2015, but the Appeals Council denied the request, (AR 1-6), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. Trevizo has appealed the ALJ's decision, arguing the ALJ committed reversible error by: failing to find Ms. Trevizo met Listing 12.05(C); inadequately formulating a complete mental or physical residual functional capacity ("RFC") or explaining his reasons for rejecting certain findings; and relying on VE testimony that was inconsistent with the Dictionary of Occupation Titles. Because the ALJ erred in his analysis of whether Ms. Trevizo met Listing 12.05(C), the Court finds that the Motion is well-taken and should be **GRANTED IN PART**.

**I. Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III. Background

Ms. Trevizo applied for supplemental security income claiming hand and arm numbness, neck pain, leg problems, inability to read and write, and memory loss limited

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

her ability to work beginning January 1, 2012. (AR 10, 82). At step one, the ALJ found Ms. Trevizo had not engaged in substantial gainful activity since her alleged onset date. (AR 12). At step two, the ALJ determined Ms. Trevizo suffered the following severe impairments: bilateral upper extremity problems, including carpal tunnel syndrome, paresthesia, numbness, radicular pain, status post bilateral carpal tunnel releases, and left trigger thumb release; obesity; degenerative disc disease; cervical spine stenosis with pain/cervicalgia; bilateral shoulder degenerative joint disease/osteoarthritis; back pain; "leg pain/problems/right knee osteoarthritis/pain;" chronic obstructive pulmonary disease; and borderline intellectual functioning ("BIF"). (AR 12). The ALJ questioned whether Ms. Trevizo's impairments affect her "more than minimally," but stated he gave Ms. Trevizo "the benefit of the doubt." (AR 12-13).

At step three, the ALJ held that Ms. Trevizo's impairments do not, either solely or in combination, meet or medically equal any Listing impairment. (AR 13). The ALJ considered several Listing impairments, including joint dysfunctions, spinal disorders, and intellectual disabilities. (AR 13-17). Significantly, the ALJ found the requirements for Listing 12.05 paragraph C were not met. (AR 17). Listing 12.05(C) requires, in part, a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C) (2016).[2] Even though Ms. Trevizo was diagnosed with verbal and full scale IQ scores between 60 and 70, (AR 266), the ALJ thought the record "clearly supports a finding" that Ms. Trevizo's "intellectual functioning is actually far greater."

---

[2] The Listings have since been amended, and both parties appear to quote the 2016 version of the Listings. (Doc. 22 at 6; Doc. 26 at 12). The Court discerns no significant difference between potentially applicable versions. Accordingly, further citation to the Listings refers to the 2016 version.

5

(AR 17). Accordingly, the ALJ found Ms. Trevizo did not meet the Listing for intellectual disability.

Before proceeding to step four, the ALJ formulated a lengthy RFC. According to the ALJ, Ms. Trevizo is capable of performing less than a full range of light work, as she is only able to occasionally lift up to 20 pounds and frequently lift and carry up to 10 pounds. (AR 17). Ms. Trevizo can stand, walk, and sit for six hours each in an eight hour day. Ms. Trevizo may frequently climb ramps and stairs, balance, stoop, kneel, crouch, reach, handle, finger, and feel with her upper extremities, but she may only occasionally crawl. (AR 17). Finally, Ms. Trevizo may never climb ladders, ropes, and scaffolds, and must avoid exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights. (AR 17).

Regarding Ms. Trevizo's mental RFC, the ALJ found Ms. Trevizo fully capable of learning, remembering, and performing simple, routine, repetitive work tasks that involve simple instructions and are performed in a routine, predictable, and low stress environment. (AR 17). Ms. Trevizo can maintain concentration, persistence, and pace for two hours at a time with regular breaks, and can perform work tasks that do not require significant reading and writing above an elementary school level. (AR 17). Finally, Ms. Trevizo may interact appropriately with supervisors, coworkers, and the public. (AR 17).

In discussing how he formed the RFC, the ALJ described several opinions and the medical evidence before explaining how the evidence was reflected in the RFC. (AR 17-24). The ALJ did the same regarding Ms. Trevizo's BIF and intellectual disability. (AR 21-22). Here, as at step three, the ALJ disregarded Ms. Trevizo's IQ score as

6

inconsistent with other evidence, including her testimony. (AR 21-22). The ALJ considered a diagnosis of BIF more consistent with the evidence than Ms. Trevizo's IQ score. (AR 22).

At step four, the ALJ determined Ms. Trevizo was unable to perform her past relevant work given her RFC. (AR 24). However, at step five, the ALJ found Ms. Trevizo acquired skills in her past relevant work that she could transfer to jobs that exist in significant numbers in the national economy. (AR 25). The VE testified that Ms. Trevizo could perform the representative jobs of hand cleaner/polisher, laundry folder, and jewelry sorter. (AR 25). Based on that testimony, the ALJ held Ms. Trevizo was not disabled within the meaning of the Social Security Act. (AR 26).

**IV.  Analysis**

Ms. Trevizo contends the ALJ committed several errors throughout his analysis. First, Ms. Trevizo argues the ALJ's analysis of whether Ms. Trevizo met Listing 12.05(C) was legally erroneous and unsupported by substantial evidence. (Doc. 22 at 3, 6-10). Second, Ms. Trevizo claims the ALJ failed to incorporate all of the medical opinions in the record into Ms. Trevizo's RFC. (Doc. 22 at 10-20). Finally, Ms. Trevizo asserts the ALJ erred at step five by relying on VE testimony that was inconsistent with the Dictionary of Occupation Titles. (Doc. 22 at 20-24). Because the Court agrees that the ALJ erred at step three, the Court will not reach Ms. Trevizo's other arguments. However, the Court will deny Ms. Trevizo's request for an immediate award of benefits.

   a. _The ALJ's Discussion and Error at Step 3_

At step three, the ALJ must determine whether a claimant's impairment "is equivalent to one of a number of listed impairments that the [Commissioner]

7

acknowledges are so severe as to preclude substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). In order to prove the claimant's impairments meet the listing, a claimant must provide specific medical findings showing an impairment "satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

Claimants must meet both the "capsule definition" of intellectual disability as well as one of four "severity prongs." *Lax v. Astrue*, 489 F.3d at 1085; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The capsule definition for intellectual disability states "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The third severity prong for intellectual disability requires, in part, "a valid verbal, performance, or full scale IQ of 60 through 70." *Id.* at § 12.05(C).

In deciding whether a mental impairment meets Listing-level intellectual disability, the ALJ may consider evidence detracting from IQ scores. *Lax*, 489 F.3d at 1087. In *Lax*, the claimant had multiple IQ scores below 60, but the ALJ considered them invalid. *Id.* at 1086-87. The ALJ relied heavily on the fact that the doctors who tested the claimant openly questioned the claimant's efforts during the test, the validity of the scores, and whether the scores accurately reflected the claimant's social functioning. *Id.* at 1087-88. The ALJ further supported his determination with five other reasons, all supported by substantial evidence. *Id.* at 1088-89.

8

Similar to *Lax*, the claimant in *Flores v. Astrue* scored a verbal IQ of 61, performance IQ of 67, and a full scale IQ of 60. 285 Fed. Appx. 566, 568 (10th Cir. 2008) (unpublished). Despite those scores, the ALJ concluded the claimant did not meet Listing 12.05(C). *Id*. The ALJ based his determination in part on the tester's notes, which undermined the scores' validity. *Id*. at 569. Importantly, the tester opined that the claimant could not be definitively diagnosed with an intellectual disability and that the claimant could perform certain types of work. *Id*. at 568. The ALJ also discussed medical opinions that supported his determination. *Id*. at 569-70. Accordingly, the Tenth Circuit concluded the ALJ provided "legally sufficient reasons" for rejecting the IQ scores that were supported by substantial evidence. *Id*. at 570.

Additionally, the Tenth Circuit distinguished *Lax* from the facts of *Harrold v. Astrue*, 299 Fed. Appx. 783 (10th Cir. 2008) (unpublished). In *Harrold*, the claimant had IQ scores between 60 and 70, but the Appeals Council held that the claimant did not establish he had a Listing-level intellectual disability. *Harrold*, 299 Fed. Appx. at 785-86. The Appeals Council relied in part on the claimant's work history as inconsistent with a diagnosis of intellectual disability. *Id* at 786. The Tenth Circuit held that was error, given the testing physician did not question the claimant's effort or the accuracy of the scores. *Id*. at 788. In contrast to *Lax*, the physician in *Harrold* stated the claimant did not malinger and had good motivation. *Id*. Further, the physician expressly opined that the claimant's work history was not inconsistent with a diagnosis of mild intellectual disability. *Id*. Given the significant differences between *Lax* and the circumstances in *Harrold*, the Tenth Circuit held it was error to reject the IQ scores based on the claimant's work history. *Id*.

9

Thus, while an ALJ may consider other evidence in rejecting an IQ score, courts generally rely on evidence from a testing or diagnosing physician questioning the validity of the score. *See Lax*, 489 F.3d at 1087; *Flores*, 285 Fed. Appx. at 569; *Romero v. Colvin*, 174 F.Supp.3d 1283, 1090-91 (D.Colo. 2016) (upholding ALJ who rejected IQ score in reliance on three psychologists who questioned the claimant's credibility and efforts and the validity of the scores). The ALJ may not reject an IQ score based on work history absent evidence undermining the IQ score from the testing source. *See Harrold*, 299 Fed. Appx. at 788. Finally, the Court must evaluate whether the ALJ's decisions for rejecting the IQ score are supported by substantial evidence. *See Lax*, 489 F.3d at 1088-89.

Turning to the facts of this case, Mary S. Loescher, Ph.D., performed a psychological consultative exam of Ms. Trevizo on February 19, 2013. (AR 265). Dr. Loescher noted that Ms. Trevizo drove herself to the appointment, arrived on time, and was well-groomed and alert. (AR 266). Ms. Trevizo took a Wechsler Adult Intelligence Scale IV test, during which Ms. Trevizo was "attentive and cooperative." (AR 268). According to Dr. Loescher, Ms. Trevizo "gave forth her best effort." (AR 268). Notably, Ms. Trevizo's full scale IQ score was 60, putting Ms. Trevizo in the bottom .4% of IQ scorers. (AR 268). Dr. Loescher opined that Ms. Trevizo's scores "fall in a borderline to impaired range of functioning and are considered a valid indication of her overall cognitive functioning at this time." (AR 268).

Under "Summary and Impressions," Dr. Loescher opined that Ms. Trevizo's "cognitive functioning is in an overall borderline/impaired range of ability and [is] consistent with a history of special education and low level education." (AR 268). Dr.

Loescher further opined that Ms. Trevizo would be anywhere from mildly to markedly impaired in various work-setting abilities. (AR 268). Finally, Dr. Loescher diagnosed Ms. Trevizo with "Cognitive functioning in borderline/impaired range" and assigned a Global Assessment of Functioning score of 50-55, (AR 269), which indicates moderate symptoms or moderate difficulty in social, occupation, or school functioning. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

As discussed above, the ALJ rejected Ms. Trevizo's verbal and full scale IQ scores. (AR 17). In his step three discussion, the ALJ noted that: Ms. Trevizo has an eighth-grade education and dropped out because she became pregnant; Ms. Trevizo possesses a driver's license, "obviously reads street signs when she drives, completed disability forms, and worked . . . for many years performing semi-skilled work." (AR 17). Thus, according to the ALJ, Dr. Loescher's BIF diagnosis is "far more accurate" than the IQ scores indicate. (AR 17).

The ALJ later expounded on his reasons for rejecting the IQ score at step four. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (holding an ALJ's analysis at step four may support a finding at step three). Again, the ALJ found Ms. Trevizo's scores "highly suspect" because she completed eighth grade and "only left school because she became pregnant." (AR 21). Further, according to the ALJ, Ms. Trevizo's school records "were completely void of any information indicating that she had been in special education." (AR 21). The ALJ reiterated that Ms. Trevizo has a driver's license, reads street signs, completed disability forms, and performed semi-skilled work. (AR 21-22). Finally, the ALJ found probative that Ms. Trevizo testified she read in her past work and currently reads children's books. (AR 22).

Several of the ALJ's reasons for rejecting the IQ score are either unsupported or contradicted by the record. First, the ALJ failed to explain the significance of the fact that Ms. Trevizo dropped out of school because she became pregnant or how that relates to the validity of her IQ score. Second, Ms. Trevizo's school records note that Ms. Trevizo was enrolled in "special program" classes, contradicting the ALJ's finding that Ms. Trevizo's records are "completely void" of any indication she was enrolled in special education. (AR 421). Further, the ALJ appears to have ignored Dr. Loescher's findings that Ms. Trevizo's cognitive functioning is consistent with a history of special education. (AR 268). Another of the ALJ's reasons for rejecting the score, that Ms. Trevizo filled out her disability forms, is clearly contradicted by the record. The forms show they were completed by staff of the Baca Law Office, Ms. Trevizo's former representatives. (AR 212, 221, 225, 247, 253). Finally, Ms. Trevizo argues that she did not perform semi-skilled work and therefore the ALJ erred in this part of his analysis. (Doc. 22 at 8-9). Regardless, even if Ms. Trevizo performed semi-skilled work, the ALJ may not rely on work history where, as here, the testing source did not question the validity of the test results or the claimant's efforts. *See Harrold*, 299 Fed. Appx. at 788-89.

After pruning away the contradicted evidence and evidence on which the ALJ could not rely, the ALJ supported his rejection of Ms. Trevizo's IQ score based only on the fact that she drives, his assumption that she reads street signs while driving, and her testimony that she reads children's books. As discussed, the ALJ may consider other evidence when determining that validity of an IQ score. *Lax*, 489 F.3d at 1086. Even assuming this evidence detracts from the validity of Ms. Trevizo's IQ score, the

Court finds this is a mere scintilla of evidence supporting the ALJ's determination. *See Langley*, 373 F.3d at 1118; (stating a decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting"); *see Hamlin*, 365 F.3d at 1214. In *Lax*, the ALJ supported his determination to reject the claimant's IQ score with five other reasons tied to specific evidence in the record. *Lax*, 489 F.3d at 1088. Here, by contrast, the ALJ appears to rely on his own opinion that Ms. Trevizo could not drive or read at all if her IQ were so low, since he cites no evidence from any source supporting this conclusion. Because the ALJ's rejection is based on a mere scintilla of evidence, the Court holds that the ALJ's decision is not supported by substantial evidence.

The Commissioner argues that statements in Dr. Loescher's report cast doubt on the validity of Ms. Trevizo's IQ score and that those statements constitute substantial evidence to reject the scores. (Doc. 26 at 13-14). The ALJ did not cite any statements from Dr. Loescher as support for rejecting the IQ scores, and the Court must review the decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Accordingly, the Court may not affirm the Commissioner's "post hoc effort to salvage the ALJ's decision." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).

### b. <u>Ms. Trevizo's Request for an Immediate Award of Benefits</u>

Ms. Trevizo cursorily asks that the Court remand this case for an immediate award of benefits. (Doc. 22 at 10; 24). Ms. Trevizo contends the Court should reverse for payment of benefits because there is evidence of disability and additional fact-finding would serve no useful purpose. (Doc. 22 at 24).

It is within the court's discretion to remand for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Among other factors, courts may consider the length of time a case has been pending and, given the available evidence, whether or not remand for additional fact-finding would be useful or merely delay a receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

The Court notes more than four years have passed since Ms. Trevizo applied for benefits, but that is not an unusual amount of time for a case that has been reviewed at the initial and reconsideration stages, heard and decided by an ALJ, and appealed to a district court. Further, the Court does not believe additional fact-finding would be futile. For instance, although the record contains some evidence Ms. Trevizo's mental impairment manifested before she turned 22, the Court has not decided whether that is substantial evidence supporting a finding that the capsule definition of 12.05 is met. The Court will therefore not remand for an immediate award of benefits.

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to support his rejection of Ms. Trevizo's IQ scores with substantial evidence. **IT IS THEREFORE ORDERED** that Ms. Trevizo's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 22), is **GRANTED IN PART**. This case is hereby **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE